IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 13-cv-03299-CMA-BNB

NANCY CHAVEZ,
MARGARITA HERRERA, and
ANA MARIA PEINADO-NOVOA,
on behalf of themselves and all
others similarly situated,

      Plaintiffs,

v.

EXCEL SERVICES SOUTHEAST, INC.,
EXCEL SERVICES NETWORK, INC., and
JAMES DAVID SAXTON,

      Defendants.

---

## ORDER GRANTING JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AS STIPULATED FINAL JUDGMENT

---

In their Motion, the parties jointly request that the Court approve their settlement

of this Fair Labor Standards Act ("FLSA") Collective Action. (Doc. # 75.)  The Court

finds that the Settlement Agreement was negotiated at arm's length and is a fair,

equitable, and reasonable resolution of a *bona fide* dispute in contested litigation.

Accordingly, as discussed in further detail below, the Court grants the instant Motion.

## I.  BACKGROUND

Plaintiffs are former employees of Defendants Excel Services Southeast and

Excel Services Network ("Excel"), which operate two cleaning companies in the Denver

metropolitan area.  Plaintiffs were residential cleaners for Excel and allege that Excel

failed to pay them requisite minimum and overtime wages over a three-year period

(between December 6, 2010 and December 6, 2013).  (Doc. # 1, ¶ 1.)  Specifically,

Plaintiffs allege that Excel's compensation method – whereby employees received a flat

percentage formula of the gross revenue billed to each cleaning client (from 16% to

25%), rather than an hourly wage – violated the FLSA in a few ways.  (*Id.*, ¶ 2.)  First,

this payment was not properly augmented to account for an overtime premium when

Plaintiffs worked over forty hours in a single work week, nor did Excel pay

supplementary wages to assure that employees were paid the minimum wage.  (*Id.*, ¶

4.)  Second, Plaintiffs were not paid for compensable time spent traveling between

locations during their work day.  (*Id.*, ¶ 3.)  Plaintiffs further allege that Defendants

should be liable for liquidated damages for these unpaid wages.  (*Id.*, ¶ 130.)[1]

*See* 29 U.S.C. § 216(b) (providing that "Any employer who violates the provisions of

section 206 or section 207 of this title shall be liable to the employee or employees

affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated

damages.")

In September of 2014, the Court granted Plaintiffs' Motion to certify the case as a

"collective action" under 29 U.S.C. § 216(b), defining the employee-class as "[a]ll

---

[1] In February of 2015, Plaintiffs sought to amend their Complaint to add an additional count
pursuant to the Colorado Minimum Wages of Workers Act, Colo. Rev. Stat. § 8-6-101,  alleging
that Excel violated that statute by subtracting the cost of the cleaning supplies Plaintiffs used on
their cleaning jobs from their total earnings.  This amendment was the subject of a contested
(and as-yet unresolved) Motion for Leave to Amend Complaint (Doc. # 51) when the parties
reached their settlement.

current and former cleaners employed by Defendants between December 6, 2010 and

December 6, 2013 who were paid a flat percentage of gross revenue and/or were not

paid for time spent traveling between work sites during the work day." (Doc. # 37.)

Following this initial certification of the Plaintiff class, Plaintiffs issued notice to potential

class members and eleven additional Plaintiffs opted in to the case. (Doc. ## 36, 38,

50, 53, 54, 56, 57.)

## A.   CALCULATION OF ESTIMATED DAMAGES: NAMED REPRESENTATIVE PLAINTIFFS

Because of Defendants' record-keeping practices, the number of hours worked

by Plaintiffs is a central point of factual dispute in this action. Specifically, Excel's

employees completed a "Daily Cleaning Sheet," recording the number of hours each

cleaner spent at a particular location performing cleaning work. However, these Daily

Cleaning Sheets did not record the time Plaintiff-employees spent traveling between

work locations, nor did they account for the time spent between 7:30 AM – the time

Plaintiff-employees typically reported to Excel's office to pick up keys, supplies, and

their cleaning assignments for the day – and their arrival at the first cleaning location.[2]

Excel also maintained a "Weekly Pay Sheet" for its employees, which listed the clients a

particular Plaintiff-employee serviced in the course of his or her work week, but did not

reflect the raw number of hours he or she worked. As such, in an attempt to reconstruct

---

[2] As explained in greater detail below, Defendants deny that this work time was compensable, contending that Plaintiffs' work days did not begin until they began cleaning at the first client's location.

the number of hours actually worked, Plaintiffs' counsel examined the 572 available[3]

"Daily Cleaning Sheets" for the three named representative Plaintiffs and added the

number of hours listed on those sheets for each given work week to reflect the (partial)

number of hours worked.  Counsel also calculated the travel time spent by the

representative Plaintiffs by using Google Maps' estimated travel times between one

customer's billing address and the second customer's billing address.[4]  (Doc. # 75 at 6.)

Using this method, Plaintiffs' counsel estimates that named representative

Plaintiff Nancy Chavez worked 269.61 hours of overtime between December 6, 2010

and December 6, 2013.  Because she was paid on a piece rate rather than hourly basis,

her regular rate of pay varied weekly, ranging between $7.28 per hour to $12.84 per

hour.  29 C.F.R. § 788.111 (calculating the regular rate of pay of piecerate workers).  As

such, she claims to have lost an estimated $1,277.64 in unpaid overtime wages over

the three year period (assuming that her work day is deemed to begin at 7:30 AM).  She

claims an equal amount in liquidated damages under 29 U.S.C. § 216(b), for a total of

$2,555.29.

Similarly, named representative Plaintiff Herrera worked for Defendant during

141 workweeks covered by this lawsuit.  Based on the methodology explained above,

Plaintiffs estimate that she worked 732.96 hours of overtime between December 6,

2010 and December 6, 2013.  As she was paid on a piece rate rather than hourly basis,

---

[3] Some of these pay records were missing because they were not maintained by Excel.  (Doc. # 75 at 6.)

[4] The parties acknowledge that this is method necessarily yields an inexact estimate.  First, it is an attempt to reconstruct travel times as much as three years after the travel occurred. Additionally, some of Excel's clients' billing addresses are different from the addresses of the locations where Plaintiff-employees performed cleaning work.  (Doc. # 75 at 6.)

her regular rate of pay varied weekly, ranging between $7.82 per hour to $14.40 per hour.  29 C.F.R. § 788.111 (calculating the regular rate of pay of piecerate workers).  As such, she claims to have lost an estimated $3,894.49 in unpaid overtime wages over the three year period (assuming that her work day is deemed to begin at 7:30 AM).  She also claims an equal amount in liquidated damages under 29 U.S.C. § 216(b), for a total of $7,788.98.

Lastly, named representative Plaintiff Pienado-Novoa worked for Defendant during 132 workweeks covered by this lawsuit.  Based on the methodology explained above, Plaintiffs estimate that she worked 895.08 hours of overtime over the three year period between December 6, 2010 and December 6, 2013.  Because she was paid on a piece rate rather than hourly basis, her regular rate of pay varied weekly, ranging between $8.24 per hour to $12.71 per hour.  29 C.F.R. § 788.111 (calculating the regular rate of pay of piecerate workers).  As such, she claims to have lost an estimated $4,382.24 in unpaid overtime wages (assuming that her work day is deemed to begin at 7:30 AM).  She also claims an equal amount in liquidated damages under 29 U.S.C. § 216(b), for a total of $8,764.49.

Plaintiffs agreed to settle their claims in exchange for 45% of their maximum possible damages (assuming a 7:30 AM start time) or for 74% of their damages (assuming the work day is deemed to begin when cleaning commenced).  Accordingly, named representative Plaintiff Chavez would receive $574.94 in unpaid overtime and $574.94 in liquidated damages; Plaintiff Herrera would receive $1,752.52 in unpaid overtime and $1,752.52 in liquidated damages; and Plaintiff Pienado-Novoa

would receive $1,972.01 in unpaid overtime and $1,972.01 in liquidated damages. (Doc. # 75 at 9-13.)  Additionally, the Settlement Agreement provides that the named Plaintiffs will each receive an incentive award of $1,000.00.  (Doc. # 75-2 at 2.)

**B.    CALCULATION OF ESTIMATED DAMAGES: OPT-IN PLAINTIFFS**

Pursuant to the calculations described above, Plaintiffs' counsel determined that named representative Plaintiffs Chavez, Herrera, and Pienado-Novoa worked, on average, 4.73 hours of overtime per week and were owed, on average, $21.16 in lost overtime wages.[5]  For the purposes of settlement, Plaintiffs' counsel valued the claims of the eleven opt-in Plaintiffs by applying these weekly averages to the number of weeks each opt-in Plaintiff worked during the period covered by the lawsuit.  Plaintiffs have agreed to settle their claims in exchange for 45% of their maximum possible damages (assuming a 7:30 AM start time) or for 74% of their damages (assuming the work day began when their cleaning duties actually commenced at a job site). Accordingly, each opt-in Plaintiff would receive $9.52 for each week worked during the period covered by the lawsuit, plus an additional amount of $9.52 per week in liquidated damages, for a total of $19.04 per week.  The following table summarizes each of the opt-in Plaintiffs' recoveries under the Settlement Agreement:

| Opt-in Plaintiff | Number of Weeks Worked (12/6/2010 – 12/6/2013) | Gross Amount of Wage Payment | Amount of Liquidated Damages | TOTAL DAMAGES |
|---|---|---|---|---|
| Manuela Gallegos | 44 | $419.07 | $419.07 | $838.14 |
| Raquel Garcia | 157 | $1,495.34 | $1,495.34 | $2,990.68 |

---

[5] These average damages figures assume that compensable time began every day at 7:30 AM. (Doc. # 75 at 8, n.2.)

| Opt-in Plaintiff | Number of Weeks Worked (12/6/2010 – 12/6/2013) | Gross Amount of Wage Payment | Amount of Liquidated Damages | TOTAL DAMAGES |
|---|---|---|---|---|
| Maria D. Flores-Garcia | 11 | $104.77 | $104.77 | $209.54 |
| Imelda Sanchez | 156 | $1,485.81 | $1,485.81 | $2,971.62 |
| Janeth Gutierrez | 102 | $971.49 | $971.49 | $1,942.98 |
| Karina Bojorquez | 148 | $1,409.62 | $1,409.62 | $2,819.24 |
| Jesus Bojorquez | 47 | $447.65 | $447.65 | $895.30 |
| Judith Jacobo | 17 | $161.92 | $161.92 | $323.84 |
| Guadalupe Bojorquez | 131 | $1,247.70 | $1,247.70 | $2,495.40 |
| Yadira Melendez | 20 | $190.49 | $190.49 | $380.98 |
| Lidia Contreras | 28 | $266.68 | $266.68 | $533.36 |

## C.     ATTORNEY FEES

The Settlement Agreement provides that the attorneys in this case, who billed

$142,918.83 in fees and costs (after exercise of billing discretion), would receive

$62,000.00 for their efforts (or 43.38% of the amounts billed).  (Doc. ## 75 at 17, 75-2 at

3.)  Plaintiffs' attorneys submitted detailed, contemporaneous time records

substantiating the time they spent litigating this matter, as well as evidence about their

experience and qualifications.  (Doc. ## 75-5, 75-6.)

## II.   DISCUSSION

## A.     LEGAL STANDARD

The provisions of the FLSA are not subject to private negotiation between

employers and employees.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350,

1352 (11th Cir. 1982) (citing *Brooklyn Sav. Bank*, 324 U.S. at 706–07);  *Dees v.*

*Hydradry, Inc.*, 706 F.Supp.2d 1227, 1234 (M.D. Fla. 2010); *Collins v. Sanderson Farms, Inc.*, 568 F.Supp.2d 714, 718 (E.D. La. 2008).  Accordingly, when employees file suit against an employer to recover wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination that the settlement is fair and reasonable.  *Lynn's Food Stores, Inc.,* 679 F.2d at 1353.   The Court may enter a stipulated judgment after scrutinizing the settlement for fairness; this scrutiny effectuates the purpose of the statute, which is to "protect certain groups of the population from substandard wages and excessive hours . . . due to the unequal bargaining power as between employer and employee." *Baker v. Vail Resorts Mgmt. Co.*, No. 13-CV-01649-PAB-CBS, 2014 WL 700096, at \*1 (D. Colo. Feb. 24, 2014) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).   Accordingly, to approve the settlement agreement, the Court must find that (1) the litigation involves a *bona fide* dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorney fees.  *See McCaffrey v. Mortg. Sources, Corp.*, 08–2660–KHV, 2011 WL 32436, at \*2 (D. Kan. Jan. 5, 2011); *Lynn's Food Stores*, 679 F.2d at 1354.

## B.    APPLICATION

### 1.    *Bona Fide* Dispute

The parties contend that a *bona fide* dispute exists in the instant case for several reasons, and the Court agrees.  Given the state of the employment records, there are legitimate questions about the threshold issue of how much time was actually spent performing overtime work by individual employees.  Because the hours spent traveling

to differing locations were never recorded, any reconstruction of the hours necessarily

involves an inexact estimate.  Nevertheless, in an action for unpaid overtime wages in

violation of the FLSA, when an employer's payroll records are unreliable, as here, a

worker must prove that he or she has in fact performed improperly compensated work

and produce sufficient evidence to show that the amount and extent of that work as a

matter of just and reasonable inference.  *See Brubach v. City of Albuquerque*, 893 F.

Supp. 2d 1216, 1224 (D.N.M. 2012) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 686–87 (1946)).   Additionally, Defendants assert that they can present

evidence that Plaintiffs were paid for all hours worked and also that they were paid

above the industry standard at all times.  As such, the computation of hours and

whether there were unpaid hours constitutes a *bona fide* dispute in this action.  *See*

*Hobbs v. Tandem Envtl. Solutions, Inc.*, No. 10-1204-KHV, 2012 WL 4747166, at *2 (D.

Kan. Oct. 4, 2012) (noting that *bona fide* dispute existed in part because "[d]efendants

dispute[d] plaintiffs' calculation of unpaid wages and overtime.")

   Additionally, the parties have a genuine disagreement about whether some of the

hours Plaintiffs estimated they worked are compensable in any case, and this

disagreement "accounts for a 56% difference in estimated overtime hours worked."

(Doc. # 75 at 7.)  Plaintiffs contend that their compensable time began at 7:30 AM,

when they typically reported to Excel's offices to obtain keys, cleaning supplies, and

their assignments for the day, because their presence was required and thus was an

"integral and indispensable" part of their "principal activity" (i.e., cleaning work).  *See* 29

C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive

instructions . . . or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked"); 20 C.F.R. § 553.221(b) (emphasis added) ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace. . . . Such time includes all **pre-shift** and post-shift activities, which are an integral part of the employee's principal activity or which are closely related to the performance of the principal activity . . .."); *Robertson v. Bd. of County Commr's*, 78 F. Supp. 2d 1142, 1155 (D. Colo. 1999) (plaintiffs who worked a fifteen-minute mandatory pre-shift briefing period may be entitled to overtime compensation).

Excel counters that initial travel to the location of an employee's "principal activity" (here, cleaning), and activities that are "preliminary or postliminary" to that principal activity are excepted from "work" under the Portal-to-Portal Act. *See IBP, Inc. v. Alvarez,* 546 U.S. 21, 28 (2005); 29 U.S.C. § 254(a). In support of this argument, Excel cites the United States Supreme Court's recent decision in *Integrity Staffing Solutions v. Busk,* 135 S. Ct. 513, 518 (2014), holding that mandatory security screenings of Amazon employees which occurred before those employees left work were noncompensable postliminary activities, because the defendant "did not employ its workers to undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." Accordingly,

a *bona fide* dispute also exists as to whether Plaintiffs were entitled to compensation for the time spent prior to the beginning of their cleaning work.[6]

**2.      Whether the Proposed Settlement Is Fair And Equitable**

To determine whether a proposed settlement under Section 216(b) of the FLSA is fair and equitable to all parties, courts have regularly applied the same fairness factors as those applied in determining the fairness and equity of a proposed class action settlement under Fed. R. Civ. P. Rule 23(e).  *Gambrell v. Weber Carpet, Inc.*, No. 10–131–KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012); *Hobbs v. Tandem Envtl. Solutions, Inc.*, No. 10–1204–KHV, 2012 WL 4747166, at *2 (D. Kan. Oct. 4, 2012).  In making such a determination, the Tenth Circuit considers (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Applying these factors here, the Court finds that the Settlement Agreement is fair and equitable.  First, it was the product of fair, honest, and arm's-length negotiations by experienced counsel.  The parties represent that they litigated this matter vigorously for eighteen months before reaching a settlement, including litigation of two motions to compel discovery and a contested motion for a collective action certification.  (Doc. # 75

---

[6] In finding that a *bona fide* dispute existed, the Court expresses no opinion as to the legal merits of either party's arguments.

at 15.)  Specifically, the parties exchanged and reviewed over 6,000 pages of payroll

documents to provide an informed basis for their negotiations; Plaintiffs' counsel spent

almost 200 hours meticulously reconstructing Plaintiffs' overtime hours; and the parties'

settlement was the result of lengthy, arms-length negotiations by experienced counsel,

including a day-long mediation with a former judge, as well as six months of additional

refinement of the Settlement Agreement.  (*Id.*)  The parties also represent that Plaintiffs'

recovery was addressed independently of attorney fees in the settlement negotiations

and that the reasonableness of the settlement recovery for Plaintiffs was not influenced

by the issue of attorney fees.  (Doc. # 75 at 17-18.)

Additionally, as discussed above, this case features serious questions of law and

fact, including the computation of unrecorded work hours and whether such hours are

compensable.  For these reasons – and because the Plaintiffs are low-wage workers

who value prompt relief – the value of an immediate recovery also outweighs the mere

possibility of future relief after protracted litigation.  Lastly, counsel are experienced

litigators, and considerable weight is given to their favorable judgment as to the merits,

fairness, and reasonableness of this settlement.  *See Marcus v. Kan. Dep't of Revenue*,

209 F.Supp.2d 1179, 1183 (D. Kan. 2002) ("Counsels' judgment as to the fairness of

the agreement is entitled to considerable weight"); *In re BankAmerica Corp. Secs. Litig.*,

210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court [ ] should

keep in mind the unique ability of class and defense counsel to assess the potential

risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness

may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

The Settlement Agreement also provides that the named representative Plaintiffs shall receive an additional $1,000 as an incentive award.  (Doc. # 75-2 at 2.)    These awards are reasonable: the named representative Plaintiffs in this action met with counsel on eight occasions, provided all factual information underlying the case, were the only Plaintiffs to answer Defendant's discovery, and missed a full day of work to attend an all-day mediation session that ultimately resulted in settlement.  (Doc. # 75 at 9, n.3.)   *See Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. Apr. 22, 2015) (approving $10,000 incentive award to named representative Plaintiffs in FLSA case).

In sum, the Court finds that the settlement is fair and equitable.

**3.      The Reasonableness of the Attorney Fee Award**

Plaintiffs' counsel submitted sufficient evidence to justify their attorney fee award in this matter.  Specifically, Plaintiffs' counsel – who are experienced wage and hour and employment litigators – billed a total of 563.6 hours on this matter, at attorney rates of $280.00 and $300.00 per hour, and at a paralegal rate of $90.00 per hour.  (Doc. ## 75-5, 74-6.)  Plaintiffs have also incurred $2,283 in itemized and taxable costs.  (Doc. # 75-5 at 5.)   In sum, then, Plaintiffs' attorneys have billed $142,918.83 in fees and costs – after taking care to exclude 144.5 hours which they attributed to possible duplication of effort – and are recovering only $62,000 (or 43.38% of amounts billed) pursuant to the settlement agreement.  (Doc. ## 75-2 at 3; 75-5, ¶ 11; 75-6, ¶ 12.)  The parties also

represent that Plaintiff-employees' recovery was negotiated separately from the attorney

fee award and that the reasonableness of that recovery was not influenced by the

attorney fee award.  (Doc. # 75 at 17-18.)

### III.   CONCLUSION

For the foregoing reasons, the Court ORDERS that the parties' Joint Motion for

Approval of Settlement Agreement (Doc. # 75) is GRANTED.  It is

FURTHER ORDERED that:

- Plaintiff's Renewed Motion for Leave to Amend Complaint (Doc. # 68) is DENIED as MOOT;

- Final certification is warranted with respect to this FLSA collective action, consisting of the 14 Plaintiffs listed in Paragraph 1(A) of the Settlement Agreement;

- The Settlement Agreement and Release is APPROVED;

- The parties' agreement to make $90,000 in settlement payments to Plaintiffs is APPROVED, including $1,000 incentive awards to each named representative Plaintiff;

- Payment of $62,000 in attorney fees is APPROVED; and

- The parties are directed to proceed with the administration of the settlement as provided by the terms of the Settlement Agreement.

Additionally, this action is DISMISSED WITH PREJUDICE, although the Court

will retain jurisdiction for the limited purpose of enforcing the settlement terms.

15

DATED:  July 27, 2015

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge